[This decision has been published in *Ohio Official Reports* at 97 Ohio St.3d 82.]

THE STATE EX REL. SCHLOSSER, APPELLANT, *v*. INDUSTRIAL COMMISSION OF OHIO ET AL., APPELLEES.

[Cite as *State ex rel. Schlosser v. Indus. Comm.,* 2002-Ohio-5443.]

*Workers' compensation—Application for temporary total disability compensation denied by Industrial Commission—Writ of mandamus denied by court of appeals—Court of appeals' judgment reversed and writ of mandamus granted ordering temporary total disability compensation to commence as of January 20, 1998, when.*

(No. 2001-1942—Submitted August 27, 2002—Decided October 23, 2002.)

APPEAL from the Court of Appeals for Franklin County, No. 01AP-47.

_____

**Per Curiam.**

{¶1} On February 8, 1996, appellant-claimant Terry S. Schlosser crushed his left fingertips in a machine at work. In the autumn of 1997, claimant began to see a psychologist, Dr. William P. McFarren. Dr. McFarren's primary diagnosis was that of major depression related to claimant's industrial injury and the narcotic medications prescribed as a result. Dr. McFarren repeated that diagnosis eight months later. He also commented that "considering the seriousness of his depression and suicidal ideations, I feel that a psychiatric consultation is critical to the successful treatment of Mr. Schlosser." He also stated that short-term intervention was unlikely to succeed.

{¶2} Dr. McFarren continued to urge authorization for a psychiatric consultation in a September 23, 1999 letter. Suicidal ideas and depressive symptomatology still predominated in his discussion.

{¶3} On October 26, 1999, the claim was finally allowed for "major depression." Two C84 reports from McFarren followed, which requested

temporary total disability compensation. Identical in content, they repeated claimant's prior symptoms and stated that "improvement can be expected."

{¶4} On March 1, 2000, claimant was finally seen by a psychiatrist, Dr. Linda Cole. The next day, claimant was examined by another psychologist, Dr. James P. Reardon. Dr. Reardon issued an extensive report. Several points were significant:

{¶5} (1)  Claimant's report of symptoms (flashbacks and nightmares) that had not been related to Dr. McFarren at any prior time;

{¶6} (2)  Claimant's negative response to the question whether he believed Dr. McFarren's visits were helpful;

{¶7} (3)  Elevated test scores on three profiles that suggested that claimant was "very likely" malingering and that claimant had a "significant tendency to exaggerate his psychological symptoms and distresses."

{¶8} In response to the question whether claimant continued to have major depression, Dr. Reardon wrote:

{¶9} "Based on the results of my examination I am unable to confirm that the patient presently suffers from Major Depression or infact [sic] that he has ever suffered from Major Depression either related to the industrial injury or separate and apart from it. Because of the invalidity of the psychological testing and therefore by extrapolation a questionable report of symptoms provided by Mr. Schlosser during the course of the evaluation it is not possible to render an opinion regarding a possible Major Depression.

{¶10} "* * *

{¶11} "I have not diagnosed Mr. Schlosser with a psychological condition or a Major Depression. Therefore I can not offer an opinion with regard to whether it is work prohibitive. What I can say is that based on my observations the only condition that may in all likelihood be diagnosed would be a Personality Disorder

NOS [not otherwise specified] that in all likelihood would have pre-dated the accident of the 2-8-96."

{¶12} In responding to the question whether the allowed condition was permanent, Dr. Reardon stated:

{¶13} "I believe that it is likely that Mr. Schlosser's present condition is permanent. I am referring primarily to the Axis II disorder of R/O Personality Disorder NOS. I have not made the diagnosis of Major Depression or any other Axis I diagnosis. The Personality Disorder NOS, should one exist, definitely would have pre-dated the accident of 2-8-96. However, having said that, it does appear that Mr. Schlosser's condition has been stable for over four years now, and I believe that it is reasonable to conclude that it 'will continue for an indefinite period of time without any present indication of recovery therefrom.' In that respect I believe that it is likely that he *has* reached maximum medical improvement with regard to his current psychological state. * * *

{¶14} "* * *

{¶15} "Again, I can not offer any opinions with regard to any recommended course of treatment in the future because I have not been able to identify to reasonable psychological certainty the presence of a diagnosable psychological condition. A primary reason is the reliability of Mr. Schlosser's report of symptoms, and the strong likelihood of significant exaggeration of whatever symptoms or psychological distress he *may* actually experience." (Emphasis sic.)

{¶16} On March 29, 2000, a district hearing officer for appellee Industrial Commission of Ohio granted TTC as of January 20, 1998, based on Dr. McFarren's March 27, 2000 C84. Dr. Reardon's report "was not found persuasive as the District Hearing Officer found that it was not clear from the report that Dr. Reardon accepted the allowed condition of 'Major Depression.' "

{¶17} On April 10, 2000, Dr. Reardon responded to a request for clarification by appellee-employer Famous Enterprises, Inc. He stated:

**{¶18}** "1. *I do acknowledge that the above captioned claim for Mr. Schlosser, Claim No. 96-341384 has been allowed for the psychological condition of Major Depression.* I fully understand and accept that the Bureau of Workers' Compensation has allowed Mr. Schlosser's claim for the condition of a Major Depression. In arriving at the opinions offered in the previous report *I did not* reject the psychological allowance that had been previously recognized. I hope that this statement will clarify that I do infact [sic] acknowledge and understand that his claim has been allowed for the condition of Major Depression.

**{¶19}** "2. Having acknowledged that the Bureau has allowed the claim for the condition of Major Depression, I nevertheless have to arrive at conclusions about Mr. Schlosser's current condition based on my own independent examination of him. These conclusions are based on his psychological state at the present time, as well as taking into account the various records from prior treatment and assessments that have been examined in this case. The fact that I am acknowledging an understanding of Mr. Schlosser's case having been allowed for the condition of Major Depression does not in any way change the opinions which I offered in my previous report." (Emphasis sic.)

**{¶20}** He again discussed at length claimant's elevated test scores and, turning to permanency, offered:

**{¶21}** "Acknowledging that Mr. Schlosser's case has been allowed for the condition of Major Depression, it is almost certain that his condition would not remain unchanged either in terms of its intensity or frequency of symptoms over a four year period whether he were treated or not. It is likely that because of circumstances and other contributing factors his situation would change be it for better or worse. In my opinion, based on my examination of Mr. Schlosser, I believe that the provisional diagnosis of Rule Out Personality Disorder NOS is the more likely contributing factor to the current psychological difficulties that Mr. Schlosser is experiencing. I believe that that condition which has been stable

throughout the duration of his 'disability' will continue for an indefinite period of time without any present indication of recovery therefrom. I believe in that respect Mr. Schlosser *has* reached maximum medical improvement." (Emphasis sic.)

{¶22} Dr. Reardon's two reports prompted a response from Dr. McFarren:

{¶23} "Dr. Reardon has not had the opportunity to observe Mr. Schlosser over an extended period of time, so it is understandable that he would have difficulty addressing issues such as his depressive disorder.

{¶24} "At this time, I do not feel he has reached maximum medical improvement. It has taken an extended period of time to even obtain Mr. Schlosser a psychiatric consultation which has just recently been initiated, since his psychological condition has been recently recognized. I do not feel it is appropriate to say he has reached maximum medical improvement when he has not even had this important treatment modality available to him until just recently. Dr. Cole is continuing to see Terry and at the last appointment had made significant changes in his pharmacological regime.

{¶25} "In Dr. Reardon's report he felt that Terry was malingering. Once again I have had an opportunity to observe Terry over an extended period of time. Having done this for over 20 years, it is generally fairly easy to spot a malingerer over a period of four years. Rarely, would someone who is malingering follow through with care consistently, driving extended distances to appointments. When Terry presented, no psychological condition had been recognized, and there was no guarantee it ever would. Mr. Schlosser has faithfully attended all appointments. In summary, malingerers generally do not follow through with care over extended periods of time, driving great distances (over 100 miles round trip) to each appointment."

{¶26} On May 2, 2000, a staff hearing officer reversed the district hearing officer, writing:

**{¶27}** "[T]emporary total compensation is denied for the requested period 07/04/97 to 05/02/00 date of this hearing.

**{¶28}** "The reports of Dr. McFarren are not persuasive to establish that the allowed psychological condition has rendered the claimant temporary totally disabled for a three year period.

**{¶29}** "All of Dr. McFarren's reports indicate that the claimant's symptoms, treatment, and complaints have remained the same for the entire requested period.

**{¶30}** "This finding is supported by the 04/10/00 report; and the testimony at today's hearing; of Dr. Reardon. Dr. Reardon testified at length as to his conclusion that the claimant's complaints and treatment results have been at maximum medical improvement since the claimant started with Dr. McFarren.

**{¶31}** "The claimant reported to Dr. Reardon that Dr. McFarren's treatments had not helped.

**{¶32}** "Finally, the claimant did not appear at hearing to dispute Dr. Reardon's opinions and testimony.

**{¶33}** "All evidence was considered."

**{¶34}** Further consideration was denied.

**{¶35}** Claimant turned to the Court of Appeals for Franklin County. Affirming the staff hearing officer's reasoning, the appeals court denied the writ. This cause is now before this court upon an appeal as of right.

**{¶36}** Claimant's alleged inability to return to the former position of employment is not in dispute. At issue is the permanency of the psychiatric condition underlying it, and the presence of some evidence supporting the commission's determination of MMI. For the reasons to follow, we find that the commission abused its discretion in relying on Dr. Reardon.

**{¶37}** In the evidence before us, an immediately disquieting component is one of timing. MMI was declared just two months and a day after claimant's first

6

visit to a psychiatrist—a referral Dr. McFarren had been seeking from the commission for two years as critical to claimant's chances for improvement. The proximity of the hearing to the initiation of psychiatric treatment foreclosed any input from Dr. Cole. We know only—through McFarren and Reardon's final reports—that Dr. Cole immediately and radically changed claimant's medications. Since no one had the benefit of Cole's potentially determinative prognosis, we question whether the MMI assessment was premature.

{¶38} As to the evidence itself, we are faced with vigorously conflicting doctors' opinions, as McFarren and Reardon alternately accuse each other and defend their reports from the other's most recent missive. McFarren prepared six relevant documents. Three specifically denied MMI—the reading claimant urges as controlling. Dr. Reardon, on the other hand, expressly determined MMI. The flaw is that the condition he labeled as MMI was a personality disorder that is not an allowed part of the claim. Reardon made no durational assessment for major depression—the allowed condition—because he did not believe it existed. His reports, consequently, cannot be some evidence of MMI of claimant's depression.

{¶39} Accordingly, we find that the commission abused its discretion in (1) relying on Dr. Reardon's reports as some evidence of MMI of claimant's major depression and (2) discounting Dr. McFarren's reports as evidence that claimant's condition was subject to improvement.

{¶40} The judgment of the court of appeals is reversed and a writ of mandamus is granted that orders temporary total disability compensation to commence as of January 20, 1998—two years prior to claimant's motion for renewed compensation.

Judgment reversed
and writ allowed.

MOYER, C.J., DOUGLAS, RESNICK, F.E. SWEENEY, PFEIFER, COOK and LUNDBERG STRATTON, JJ., concur.

————————————

Butkovich, Schimpf, Schimpf & Ginocchio Co., L.P.A., and Lisa M. Clark, for appellant.

Betty D. Montgomery, Attorney General, and Dennis H. Behm. Assistant Attorney General, for appellee Industrial Commission.

Vorys, Sater, Seymour & Pease, L.L.P., and Randall W. Mikes, for appellee Famous Enterprises, Inc.

————————————